WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Brian William Pryor,

Plaintiff,

v.

Paul Penzone, et al.,

Defendants.

No. CV-17-1276-PHX-JAT (DKD)

**ORDER**

Plaintiff Brian William Pryor, who is confined in a Maricopa County Jail, has filed a *pro se* civil rights Second Amended Complaint pursuant to 42 U.S.C. §1983. The Court will order Defendants Hilmo, Arpaio, Penzone, Willette, Wilkins, Taylor, and Von Reeden to answer portions of Counts One, Two, and Three of the Second Amended Complaint, and will dismiss the remaining claims and Defendants without prejudice. Plaintiff has also filed several motions which will be denied.

**I.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.     Second Amended Complaint**

Plaintiff names the following Defendants in his Second Amended Complaint: Maricopa County Sheriff Paul Penzone; Maricopa County Correctional Health Services Director Jeffry J. Alvarez; Physician Assistant Paul Hilmo; Detention Officer Sergeant Von Reeden; former Maricopa County Sheriff Joseph Arpaio; Detention Officers Cori Willette, Julian Taylor, and Tyler Glagovich; Detention Captain Michael Wilkins; and

Detention Lieutenant Paul Noble. Plaintiff raises four counts for relief and seeks monetary damages and injunctive relief.[1]

### III. Discussion

#### A. Count One

In Count One, Plaintiff alleges his Eighth Amendment rights were violated when he was denied adequate medical care. Plaintiff alleges that beginning in October 2016, he submitted multiple Health Needs Requests because he was experiencing chronic vomiting. On December 14, 2016, Plaintiff had a chronic care appointment with Defendant Hilmo, during which they discussed Plaintiff's diabetes care, low blood pressure, hypertension, and vomiting. Plaintiff alleges that Defendant Hilmo accused Plaintiff of lying about his conditions and told Plaintiff "you just want better food." Plaintiff claims Defendant Hilmo was deliberately indifferent to the vomiting issue as well as to Plaintiff's need for diabetes care. Plaintiff claims Defendant Hilmo said Plaintiff's very low glucose levels did not concern him and told Plaintiff "I don't care about your diabetes." Plaintiff alleges that he grieved the visit in grievances #16-55151 and #16-083265, that the grievances were escalated, and that an unknown CHS employee stated that Alvarez had reviewed Plaintiff's chart and dismissed his grievances as not grievable issues.

Plaintiff alleges that Defendant Hilmo ignored his vomiting and that as a result of the vomiting and inability to eat the food he is given, he has lost 80 pounds since entering the Maricopa County Jail. Plaintiff further claims that he vomited his dinner which caused low blood sugar which, in turn, caused him to black out and fall on January 1, 2017. Plaintiff contends that, when he awoke, C. Zerwinski (B3578) asked him if he was ok. Plaintiff claims that he reported head and back injuries which continue to cause him pain.

---

[1] The Court notes that most of the additional allegations in the Second Amended Complaint are incidents that post-date the filing of the initial complaint. As described herein, the Court will permit some of these allegations but notes that successive amendments will not be permitted.

- 3 -

Plaintiff contends that Defendant Alvarez has created or allowed a custom of ignoring health needs request ("HNR") forms and that this, combined with Defendant Hilmo's inaction in providing adequate medical care, led to the January 1, 2017 hypoglycemic incident. Plaintiff contends that Defendant Hilmo's deliberate indifference showed gross negligence. Plaintiff further contends that Defendants Penzone, Arpaio, and Alvarez "hold a policy, practice, or custom of hindering prisoners such as the Plaintiff from grieving medical decisions" through their approval of rules and regulations. Specifically, Plaintiff contends that Defendants Penzone and Arpaio approved Section 19-F of the MCSO Rules and Regulations for Inmates and Defendant Alvarez approves policy JA-11-CHS and that, together, these policies make medical decisions "not grievable." Plaintiff claims that, if his grievances had been allowed, his January 1, 2017 blackout "may not have occurred." Plaintiff contends that Defendants Penzone, Arpaio, and Alvarez foster a culture of deliberate indifference to the well-being of prisoners.

### 1. Failure to State a Claim

Plaintiff has failed to state claim against Defendant Alvarez. First, there is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Further, to the extent Plaintiff claims Defendant Alvarez implement policies, practices, or customs that led to "negligent" medical care, Plaintiff has failed to identify or describe those policies or provide any facts linking the policies to his injuries.

Plaintiff's allegations that Defendants Penzone, Arpaio, and Alvarez "hold a policy, practice, or custom of hindering prisoners such as the Plaintiff from grieving medical decisions" and that they "foster a culture of deliberate indifference" are too vague to state a claim and Plaintiff acknowledges that he has filed several grievances.

Plaintiff has failed to state a claim against Defendants Alvarez, Penzone, and Arpaio in Count One and these portions of Count One will be dismissed.

### 2. Claim for which an Answer will be Required

Liberally construed, Plaintiff has adequately stated an Eighth Amendment medical claim against Defendant Hilmo in Count One and the Court will require Defendant Hilmo to answer this claim.

### B. Count Two

In Count Two, Plaintiff alleges Defendants Arpaio and Penzone violated his rights under the Eighth and Fourteenth Amendments by providing him with food that lacks sufficient nutrition to maintain his health. Plaintiff states that he has been confined in the Maricopa County Jail since August 31, 2016, and that he is frequently served food that is often rotten, overripe, and inedible. Plaintiff alleges that he informed Defendant Taylor that he has diabetes in December 2016 and that he similarly informed Defendant Willette before February 2017. Plaintiff further asserts that Defendants Taylor and Willette were made aware of his diabetes after an entry was made in the "Op Log" following Plaintiff's January 1, 2017 hypoglycemic incident.

Plaintiff asserts that from August 2016 to March 2017, he has lost at least 80 pounds and that this was because of inadequate nutrition. Plaintiff also states he has followed "MCSO policy to attempt to get replacement food each time," but that in January and February 2017, Defendants Taylor, Carbajal, and Willette repeatedly refused to get him any replacement food. Plaintiff alleges that, after Defendant Willette refused to get replacement food on February 7, 2017, Defendant Willette said "Bet he won't grieve me again." Plaintiff further alleges that in March 2017, Defendant Taylor was repeatedly reluctant or refused to get replacement food for Plaintiff and that in June 2017, Defendant Taylor again refused to get replacement food for Plaintiff until Plaintiff threated to file a grievance.

Plaintiff alleges that Defendant Arpaio "boasted about the low cost 35 cent meals and his workers in media reports boasted about the low cost of the food." Plaintiff contends that Defendants Penzone, Arpaio, Taylor, and Willette are deliberately

indifferent "to Plaintiff's need for proper nutrition to maintain health [and] this is a violation of his constitutional rights."

### 1. Failure to State a Claim

A pretrial detainee's claim for unconstitutional conditions of confinement arises from the Fourteenth Amendment Due Process Clause rather than from the Eighth Amendment prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 and n.16 (1979). Nevertheless, the same standards are applied. *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

To state a conditions-of-confinement claim, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Plaintiff has not alleged sufficient facts to demonstrate that the Defendant Detention Officers were deliberately indifferent to a serious risk of harm to Plaintiff. Liberally construed, Plaintiff has alleged Defendants were aware that he is diabetic but Plaintiff makes no allegations about how or when Defendants became aware of this information and Plaintiff has not alleged facts showing that the failure to provide him with a replacement tray was more than mere negligence; negligence is not sufficient to state a Fourteenth Amendment claim. Accordingly, the Court will dismiss Plaintiff's allegations in Count Two against Defendants Taylor and Willette.

## 2. Claim for which an Answer will be Required

Plaintiff also claims that, for the purpose of saving money, Defendants Arpaio and Penzone have implemented a policy of "providing food that lacks nutrition to maintain health" and that this policy has resulted in Plaintiff experiencing significant weight loss since entering the Maricopa County Jail system. Liberally construed, these allegations adequately state a Fourteenth Amendment conditions-of-confinement claim and the Court will require Defendants Arpaio and Penzone to answer this portion of Count Two.

### C. Count Three[2]

In Count Three, Plaintiff alleges his First Amendment rights were violated when he was subjected to a "campaign of harassment" in retaliation for filing grievances, speaking to Professional Standards Bureau investigators, or filing civil suits. Plaintiff alleges multiple instances of retaliation.

#### 1. Failure to State a Claim

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of*

---

[2] This was Count Five in Plaintiff's First Amended Complaint and was similarly labeled in his Second Amended Complaint. (Doc. 18 at 9) However, Count Three and Count Four of the First Amended Complaint were dismissed by the Court and Plaintiff is not pursuing them. (Doc. 14; Doc. 17 at 2) The Court will renumber the proposed counts in the Second Amended Complaint so that they are consecutive.

*Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff claims that in December 2016, he filed several grievances relating to his conditions of confinement, some of which pertained to Defendants. On December 20, 2016, "several officers under the supervision of Von Reeden including Taylor and Willette conducted a surprise cell search of cells in T-21A." Plaintiff alleges that during the search, Defendant Taylor pointed a pepper-ball launcher at Plaintiff. Plaintiff filed a grievance on this issue, as well as on the confiscation of an unopened 7-Up bottle and colored pencils. Plaintiff contends that this confiscation was a result of the grievances he had filed about Defendant Taylor's conduct because previous cell searches had not included any property seizures. Moreover, Plaintiff alleges that the search and confiscation were close enough in time to the grievances that they constitute retaliation by Defendant Von Reeden. Plaintiff claims that he grieved the confiscation of his property and this led to a conversation with Defendant Von Reeden who told Plaintiff "you complain a lot" and "you think you know a lot about the law." Plaintiff alleges that "these statements seemed to imply the search was intended to chill efforts to grieve staff and conditions." Plaintiff contends that he also said "I [Defendant Von Reeden] always back up my officers." Defendant Von Reeden denied Plaintiff's grievance because he determined Plaintiff "had a chance to recover his property." Plaintiff appealed. Defendant Wilkins, in granting the appeal, found Plaintiff did not have time to recover his property and ordered the items be refunded. Plaintiff alleges that, to date, this has not occurred.

Plaintiff has not alleged facts demonstrating that the December 20 search, or confiscation of his property, was in retaliation for exercise of his First Amendment rights, nor does he allege that the search or confiscation of property was conducted without a legitimate penological interest. Conclusory allegations of retaliation are not sufficient to state a claim and the Court will dismiss this portion of Count Three.

Plaintiff next claims that on or about January 24, 2017, Defendant Von Reeden assigned him and other former law enforcement inmates to pod T22B. Plaintiff claims that it was a "hostile 'anti law enforcement' environment" and that, subsequently, other inmates housed in T22B told him "[Defendant] Willette announced the pending arrival of 'former cops,' as inmates that they 'grieve a lot,' and that they would 'grieve [the inmates] for breaking the rules,' in an attempt to get the other inmates against us." Plaintiff has not alleged facts demonstrating that Defendant Von Reeden's transfer order was based on Plaintiff's grievances, nor has Plaintiff alleged that Defendant Willette's statements were based on Plaintiff's filing of grievances or complaints. Moreover, Plaintiff's allegation that Defendant Willette's statements created a "hostile environment" for him are vague; Plaintiff does not allege specific facts showing his safety was threatened or that he was in some other way injured by the statements. These allegations fail to state a claim and will be dismissed.

Plaintiff asserts that on February 8, 2017, Defendant Willette wrote Plaintiff up "for trivial violations of jail rules after the grievance was filed." Plaintiff alleges that he had never been written up for breaking any MCSO inmate rules and that, on this day, no other inmates were issued DARs for the same violation. Plaintiff alleges that the proximity between the February 7, 2017 incident and this write up lends credence to the conclusion that this write up was retaliatory. Plaintiff further alleges that, as a result of this write up, he "was sanctioned and removed to disciplinary segregation." Plaintiff alleges that he wrote a letter to Defendant Penzone about the actions of Defendants Taylor and Willette, filed PSB complaints about their actions, and spoke with Defendant Noble in March 2017 about his letter to Defendant Penzone and other concerns. Plaintiff alleges that Defendant Noble told Plaintiff that "If an inmate wants to file a grievance, that is their right, but then I treat him like an inmate and they have to follow every rule. Do you understand?" As a result of that comment, Plaintiff reconsidered filing grievances so that he would not receive more targeted searches or DARs. Plaintiff fails to allege facts showing the disciplinary write-ups were issued, or the search of his cell

conducted, without a legitimate penological purpose. These allegations fail to state a retaliation claim and will be dismissed.

Plaintiff alleges that on March 5, 2017, Plaintiff witnessed Defendant Willette and Defendant Taylor become violent with [another inmate] and use excessive force. Plaintiff filed a PSB complaint and filed a PREA grievance due to the repeated sexual language used by [Defendant] Willette." According to Plaintiff, MCSO's PREA policy allowed other inmates to report PREA violations without retaliation. On March 6, 2017, Defendant Taylor "wrote up Plaintiff with false disciplinary charges of 'inciting a riot' and 'interfering with an officer' while witnessing another interaction with [another inmate's] cellmate." Plaintiff alleges that there is no penological purpose in punishing someone who witnesses misconduct and that the timing of the adverse action after his protected conduct means that the adverse action was retaliatory. However, "[a]n inmate has no First Amendment right to provide legal assistance to fellow inmates." *Shaw v. Murphy*, 532 U.S. 223, 231 (2001). Accordingly, Plaintiff cannot state a claim for retaliation based on this allegation.

On June 10, 2017, Plaintiff notified Defendant Taylor about problems with his dinner but Defendant Taylor refused to get replacement food until Plaintiff threatened to file a grievance. Plaintiff filed a grievance. On June 14, 2017, Officer Smith, who is supervised by Defendant Von Reeden, and an unknown female officer searched Plaintiff's cell. When Plaintiff asked why they were searching his cell, Officer Smith told Plaintiff that they were "looking for grievances." Plaintiff contends that Smith looked through a folder that Plaintiff had labeled "Legal Paperwork," a letter from the MSCO legal liaison was seized, and Plaintiff's notes about Defendant Taylor were missing after the search. Plaintiff filed a grievance and a PSB complaint.

On June 16, 2017, and June 23, 2017, Plaintiff alleges that "officers" were gossiping about Plaintiff's civil and criminal cases and that Defendant Willette stated "that they would see how tough [Plaintiff] was on 'GP.'" Plaintiff construed this

comment as a threat and filed a grievance and notified PSB. Defendant Von Reeden reviewed the June 2017 grievances and concurred with staff actions.

Plaintiff claims that before this lawsuit, he had no disciplinary tickets, was getting his meals replaced, and was allowed two hours out of his cell but after he initiated this lawsuit, "the adverse events and the campaign of retaliation beg[a]n." Plaintiff further claims that, from February 2017 until the present, Defendants Von Reeden and Wilkins abused the DAR and rule enforcement processes in order to punish Plaintiff and chill his First Amendment rights. Plaintiff also alleges that Defendants Penzone and Arpaio selected Defendants Noble and Wilkins to be lieutenants and enable a custom of retaliating against inmate who file grievances, speak to PSB, or file lawsuits.

To the extent Plaintiff claims he was retaliated against for filing grievances, or for filing and preparing this lawsuit, Plaintiff has not alleged facts showing the disciplinary tickets were substantially motivated by his filing grievances and a lawsuit, nor does he allege the disciplinary actions failed to serve a legitimate penological purpose. His allegations therefore fail to state a claim and will be dismissed.

## 2. Claim for which an Answer will be Required

After learning his claim had been upheld on appeal, Plaintiff filed a new grievance and wrote to the Professional Standards Bureau requesting an investigation. Plaintiff alleges that his grievance would have been places in Defendant Von Reeden's box for processing. On January 10, 2017, hours after filing the grievance, Plaintiff's cell was searched and Plaintiff's medically authorized blanket was confiscated. Defendant Taylor conducted the search and Plaintiff thinks it was "likely" that Defendant Von Reeden ordered the search. Plaintiff contends that his cell was the only one searched, that confiscating his blanket had no valid penological purpose, and that the temporal proximity between a grievance against Defendant Von Reeden and the search by his supervisees supports his claim that the search was retaliatory.

On February 7, 2017, Plaintiff informed Officer Carbajal that carrots in his dinner were rotten. Plaintiff alleges that Officer Carbajal told him that a replacement tray had

1 been ordered and took Plaintiff's dinner tray. Plaintiff further alleges that Officer Carbajal and Defendant Willette then switched job stations and that Defendant Willette spent approximately three hours telling Plaintiff that his replacement meal was coming but eventually told Plaintiff that it was not coming and "next time don't complain about the food." Plaintiff alleges that he asked for a supervisor and, in response, Defendant Willette walked away and said, "bet he won't grieve me again." Plaintiff further alleges that Defendant Willette wrote in the OpLog that Plaintiff had rejected/refused food on that day. Plaintiff claims that Defendant Willette knew about Plaintiff's diabetes before this incident. Plaintiff further claims that he received a "ladmo" sack to eat from Officer #A9396 during third shift. Plaintiff claims that he received this sack of food 16 hours after his previous meal and that this was a violation of MCSO policy D6-2(1)(A) and (B). Defendant claims that Defendant Von Reeden, who supervises Defendant Willette, took no corrective action while processing Plaintiff's grievance of this February 7, 2017 incident.

On March 3, 2017, Plaintiff filed a grievance because his dinner had rotten food and Defendant Taylor did not provide him with a replacement meal. Plaintiff assumes that the grievance was placed in the Sergeant's box for processing before Defendant Taylor started his shift on March 4, 2017. On March 4, 2017, Plaintiff's cell was the only one searched out of 71 cells in town 21 and Plaintiff was written up for having food in his cell and for having tape on a cell fixture. Plaintiff alleges that the timing of this search, approximately 19 hours after grieving Defendant Taylor, implies that the search was retaliatory.

Plaintiff alleges that he spoke with Defendant Wilkins on April 24, 2017, about his PREA report and a change in out-of-cell time for pod T21A. Plaintiff claims that Defendant Wilkins said that the "LEO" group, which includes Plaintiff, is "the noisiest" and their out-of-cell time was cut in half because the group filed "too many grievances and felt the extra out-of-cell time was a 'right.'"

Plaintiff next alleges that on May 18, 2017, Defendant Glagovich—who is a subordinate to Defendants Von Reeden, Noble, and Wilkens, and friends with Defendants Taylor and Willette—accused Plaintiff of "disrupting the institution, altering MCSO items, attempting a rule violation, and passing property. Plaintiff was receiving 2 external grievance forms that Defendant Glagovich refused to get for Plaintiff, that [were] time sensitive." Plaintiff states that he was found guilty of the rule violations and his appeal was denied by Defendant Noble. Plaintiff contends that he was engaging in constitutionally protected conduct and that Defendants Von Reeden, Noble, Wilkins, Taylor, Willette, and Glagovich increased his solitary time in cell, withheld food, completed disciplinary action reports, and penalized him for trivial jail rules close in time to his protected conduct with no penological purpose.

Plaintiff claims that on June 7, 2017, he filed a PREA complaint about an inmate making sexual comments and asking for sexual favors. Plaintiff alleges that Defendant Von Reeden approved the decision to transfer him from pod T-21A to T-21B. Plaintiff alleges that in February 2017, he was assaulted, threatened, and berated by inmates in T-21B and, as a result, the pod was placed on override and locked down for 48 hours. This upset several inmates in T-21B who later threated to harm Plaintiff. On June 7, 2017, Plaintiff reminded Carbajal of the February incident and the subsequent threats and Carbajal responded that "it didn't matter" and moved Plaintiff to T-21B.

On June 11, 2017, Defendant Taylor wrote up Plaintiff for using his full name on a tank order and "the BHU later found Plaintiff not guilty." Plaintiff claims that Defendant Von Reeden approved Defendant Taylor's DAR and that there is no penological purpose in disciplining inmates for using someone's name. On June 27, 2017, Defendant Von Reeden again wrote up Plaintiff for using "John Von Reeden" on a grievance form and "BHU again denied this DAR as not guilty."

Liberally construed, these allegations adequately state First Amendment retaliation claims and the Court will require Defendants Willette, Wilkins, Taylor, and Von Reeden to answer this claim.

### D. Count Four

In Count Four, Plaintiff alleges he was denied due process during disciplinary proceedings on multiple occasions. Procedural due process safeguards in a prison disciplinary hearing require that the defendant receive: (1) written notice of the charges, no less than twenty-four hours prior to the hearing; (2) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the defendant to do so. *Wolff v. McDonnell*, 418 U.S. 539, 565-66 (1974).

Once these *Wolff* procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by "some facts." *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984) (citation omitted). Due process requires simply "that there be some evidence to support the findings made in the disciplinary hearing." *Superintendent v. Hill*, 472 U.S. 445, 457 (1985).

Plaintiff claims that on February 8, 2017, Defendant Willette issued him a disciplinary ticket for being in an unauthorized area, unauthorized contact with an inmate, and possession of an unauthorized item. Plaintiff claims he was "passing food from one human being to another." Plaintiff alleges that there was "no clear rule or markings that establish the cell front is an unauthorized area." Plaintiff's claims that a "BHU sergeant did not allow any witnesses nor did she present any proof besides [Defendant] Willette's allegation." Plaintiff alleges that a witness would have confirmed that there were no markings. Plaintiff further alleges that he received seven days restriction and was moved by Defendant Von Reeden's team to disciplinary segregation.

Plaintiff does not allege that he was denied written notice of the charges or a statement of evidence and reasons for the disciplinary action, nor does he allege that calling witnesses would not have been hazardous to safety or correctional goals. These allegations fail to state a due process claim and will be dismissed.

Plaintiff further alleges that on March 4, 2017, Defendant Taylor filed two false disciplinary tickets against him. Plaintiff claims he was found guilty and his appeal was denied. Plaintiff does not claim he was denied any of the three due process safeguards and therefore fails to state a claim.

On March 6, 2017, Defendant Taylor allegedly charged Plaintiff with "inciting a riot" and "interference [with] an officer in the performance of his duties." Plaintiff claims the charges were false and he was found guilty "without a proper hearing or [the disciplinary hearing officer] discussing with witnesses." Plaintiff's allegations are too vague to state a due process claim; it is unclear whether Plaintiff received a hearing that he believes was insufficient, or if he is alleging that he did not receive any type of hearing. The former allegation is insufficient to state a due process claim. Moreover, Plaintiff does not allege that he was denied notice or a statement of evidence and reasons for the disciplinary conviction. These allegations fail to state a due process claim.

Finally, Plaintiff alleges that on May 18, 2017, Defendant Glagovich "wrote up the Plaintiff for receiving 2 MCSO issued grievance forms from [another inmate]." Plaintiff states he was found guilty "on passing property" and "innocent on 3 charges Glagovich filed but BHU found not sustained." Again, Plaintiff does not allege he was denied due process safeguards in connection with these charges and therefore fails to state a claim.

The Court will dismiss Count Four for failure to state a claim.

**IV. Motions**

    **A. Motion to Correspond**

On August 18, 2017, Plaintiff filed a "Motion to Correspond" (Doc. 19) in which he asks that the Court issue an order allowing him to communicate and correspond with witnesses who are listed in his Complaint. Plaintiff has not identified the individuals with whom he wishes to correspond, or described what information these witnesses will provide. The Court previously denied a similar motion and will deny the Motion.

### B. Motion for Extension of Time to Effect Service

Plaintiff moved for additional time to serve Defendants with the First Amended Complaint. (Doc. 21) Because the Second Amended Complaint will need to be served on Defendants, the Court will deny this motion as moot.

### C. Motion For Seized Papers

Plaintiff, in a letter address to Judge Duncan, alleges that much of his legal papers were seized during a search of his jail cell and states that he is concerned that this will prejudice his ability to prosecute his claim. (Doc. 22)

It is improper for a party to communicate directly with court personnel. Simply mailing a letter to the Clerk of Court, the judge, or any court personnel is unacceptable. Any request for action by the Court must be in the form of a motion that complies with the Rules of Practice of the United States District Court for the District of Arizona (the Local Rules). Any future letters directed to the Clerk of Court, the judge, or any court personnel will be stricken from the record and will be returned to Plaintiff.

Plaintiff may request that the Arizona Department of Corrections and/or individual defendants preserve relevant discovery – including, but not limited to, any and all relevant witness statements, incident reports, photographs, videotapes, medical records, and investigative reports – in light of Plaintiff's pending lawsuit. *See, e.g.*, *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011) ("the duty to preserve is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.")

## V. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or

(2) file a *non*-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.     Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff August 18, 2017 Motion to Correspond (Doc. 19) is **denied**.

(2)     Plaintiff's September 8, 2017 Motion for Extension of Time (Doc. 21) is **denied**, as moot.

(3)     Plaintiff's September 12, 2017 Motion to Address MCSO Seizure (Doc. 22) is **denied**.

(4)     Plaintiff's Motion to Amend Complaint (Doc. 17) is **granted**. Defendant Hilmo must answer Count One; Defendants Arpaio and Penzone must answer Count

Two; and Defendants Willette, Wilkins, Taylor and Von Reeden must answer Count Three, as described in the above discussion of Plaintiff's claims.

(5) Count Four and the remaining claims in Counts One, Two, and Three are **dismissed** without prejudice.

(6) Defendants Alvarez, Glagovich, and Noble are **dismissed** without prejudice.

(7) The Clerk of Court must send Plaintiff a service packet including the Second Amended Complaint (Doc. 18), this Order, and both summons and request for waiver forms for Defendants Hilmo, Arpaio, Penzone, Willette, Taylor, Von Reeden, and Wilkins.

(8) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(9) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(10) The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(11) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

  (a) personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

  (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

 (12) **A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

 (13) Defendants must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

 (14) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1     (15) This matter is referred to Magistrate Judge David K. Duncan pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

    Dated this 7th day of December, 2017.

*James A. Teilborg*
Senior United States District Judge